MOSES v. HAMBURG–AMERICAN PACKET CO. et al.

(District Court, S. D. New York.   April 12, 1898.)

COLLISION—PERSONAL INJURIES—TICKET EXEMPTIONS—$100 LIMITATION—HARTER ACT.
   On a collision in New York harbor causing loss of the hand of a boy four years old, a steerage passenger, *held* that the steamer, being in fault, was not exempted by the third section of the Harter act, nor by a limitation to $100 for any personal injuries expressed in the ticket, this not being a reasonable provision; nor by exemptions from liability for negligence.

Libels in personam to recover damages for personal injuries.

Grossman & Vorhaus (De Lagnel Berier, of counsel), for libelants.
Wheeler & Cortis, for Hamburg Line.
Robinson, Biddle & Ward, for Clyde Steamship Co.

BROWN, District Judge.   In the collision between the steamships Persia and Saginaw, for which both vessels were held to blame (84 Fed. 705), the libelant Jacob Moses, then four years and eight months old, and a steerage passenger with his mother on the Persia, suffered such injuries of the right hand that it was amputated just below the wrist.   Libels were filed for damages in his own behalf and also by the father, Abraham Moses.   By stipulation between the parties, it was agreed that the decision upon the trial of the principal cause between the Persia and the Saginaw, as respects the question of negligence, should stand as the decision in the present case; and that issue is therefore disposed of in favor of the libelants.

The answer of the Hamburg Company, the owners of the Persia, set up as a further defense, (1) the provisions of the Harter act (Feb. 13, 1893; 2 Supp. Rev. St. p. 81); and (2) the following provision in the contract of carriage:

"Neither the ship, the shipowner or the agent is responsible beyond the amount of $100 for loss of or injury to the passengers of the Persia, arising from steam, latent defects in the steamer, * * * default or negligence of the shipowner's servants, whether on board the ship or not, or from the negligence in navigation of any other vessel."

Neither of these defenses can I think be sustained.   The first is not consistent with previous adjudications in this court, or with the proper construction of the act of 1893, as recently expounded in the case of The Delaware, 161 U. S. 459, 16 Sup. Ct. 516.   In the latter case the libel was filed by the master, owner and crew of the tug Talisman to recover damages arising from a collision of the Delaware with the Talisman through the faulty navigation, as it was determined, of the Delaware alone.   Upon an appeal from a decree in favor of the libelant, the question was submitted upon certificate to the supreme court, whether the Harter act afforded any defense. The third section of that act, read literally, is broad enough to include all damages inflicted upon other vessels by collision; just as it is claimed in this case that the statute is broad enough to include, and must, it is therefore urged, include personal injuries to passengers.   The supreme court, however, held otherwise as respects col-

lision damages to other vessels; and in the opinion of the court, delivered by Mr. Justice Brown, it is said:

"It is entirely clear, however, that the whole object of the act is to modify the relations previously existing between the vessel and her cargo. This is apparent not only from the title of the act, but from its general tenor and provisions, which are evidently designed to fix the relations between the cargo and the vessel, and to prohibit contracts restricting the liability of the vessel and owners in certain particulars connected with the construction, repair and outfit of the vessel, and the care and' delivery of the cargo." Page 471, 161 U. S., and page 522, 16 Sup. Ct. "It is true that the general words of the third section above quoted, if detached from the context and broadly construed as a separate provision, would be susceptible of the meaning claimed, but when read in connection with the other sections and with the remainder of section 3, they show conclusively that the liability of a vessel to other vessels with which it may come in contact was not intended to be affected." Page 474, 161 U. S., and page 523, 16 Sup. Ct.

The entire course of reasoning in the opinion in support of the decision of the court that the only object of the act is "to modify the relations previously existing between the vessel and her cargo," is equally applicable in excluding the act from any application to passengers.

A further consideration not there referred to, but suggested by the present case, is the fact that section 3 is expressly limited in its application to vessels "transporting merchandise or property." The Persia carried merchandise as well as passengers. But there are many vessels that carry passengers only, and to those vessels the act cannot apply. But it is not conceivable that congress intended by this act to discriminate between these two classes of vessels in respect to their liability for negligent injuries to passengers, and to provide that the one class should be exempt from liability and the other class not exempt, simply because the former carries merchandise and the latter does not. The restriction of the third section to "vessels carrying merchandise" is indicative of the limited scope of the act, as construed by the supreme court, extending only to the relations between the vessel and her cargo, or its owners. See The Viola, 59 Fed. 632, 634, 60 Fed. 296; The Niagara, 77 Fed. 335. That the third section does not apply to passengers or their baggage was ruled by this court in the recent case of The Rosedale and The Oregon, 88 Fed. 324.

2. In cases not within the exemptions of the Harter act, the law of this country in respect to the liability of carriers for damages arising though the negligence of their servants, as established in Railroad Co. v. Lockwood, 17 Wall. 357, has not been changed. A reasonable provision, however, in the bill of lading or other contract, limiting the extent of the carrier's liability for loss or injury of goods, operating as a liquidation of damages in advance, and having reference to the price of carriage, is sustained. Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151. If the provision of the contract of transportation in this case were a reasonable provision of that character, I think it should, therefore, be upheld. But considering the nature of the injuries liable to happen to passengers through careless navigation, including, it may be, the loss of life or limb, and the large awards often made therefor, which the courts have often held to be not unrea-

sonable or excessive, it seems to me that a stipulation that the damages for any possible personal injury shall not exceed $100, cannot be seriously considered as any reasonable or substantial provision whatever. Where the right to limitation as respects damages to property has been sustained, there has been at least some reasonable or appreciable proportion between the sum fixed and the loss contemplated. In this stipulation, there is no such reasonable relation. The sum of $100 is scarcely more than a nominal sum. Under the decision above referred to I must, therefore, find that this clause of the contract cannot be upheld as a reasonable provision.

3. The father, in the present case, was engaged in the clothing business, as a manufacturer or dealer in a comparatively small way. The son was likely to be brought up in the same or a similar business. Taking all the circumstances into account, I think an allowance should be made of $2,500 to the son, and $500 to the father, for which sums decrees may be entered with costs.